UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 18 CR 10028-MLW |
| ) | |
| v. ) | |
| ) | |
| JAMES POLESE ) | |
| ) | |
| Defendant. ) | |

**<u>UNITED STATES' SENTENCING MEMORANDUM</u>**

James Polese was a senior money manager at a major investment advisory firm in Boston. He led a very comfortable life, had ample salary, huge bonuses and other perks from his high finance position. Nonetheless, he stole hundreds of thousands of dollars from his trusting clients. The government respectfully recommends that the Court impose a sentence in the range of of seventy-five to eighty-seven months incarceration, supervised release for three years and a special assessment of $100 per count. Pursuant to the plea agreement in this case, the Defendant agreed to make restitution in the amount of at least $462,000, plus reasonable costs and attorneys' fees of any victims.

Polese deserves the significant sentence as punishment for his inexcusable crimes. In addition, investment advisers earn high salaries and bonuses in part because they are entrusted with managing large amounts of other people's money. A serious term of incarceration is necessary here to deter others who may lack a moral compass and be tempted to steal from clients whom they think are too trusting, too elderly or too ill to detect their crimes.

SUMMARY OF THE FACTS

Polese took his clients' money to finance investments in which Polese personally invested, as well as to make and guarantee a real estate investment in his own name, and to pay personal expenses. He did this despite the fact that he received more than $750,000 in total compensation a year.

First, in August 2014, Polese and his junior associate and mentee, Cornelius Peterson, used $100,000 from the account of their client, Client A to invest in a wind farm project in which Polese also invested his own money, and which needed additional funding. The wind farm project was not an investment opportunity offered by or authorized as a recommended investment by the financial services company for which they worked. Peterson was also on the Board of Directors of the entity controlling the wind farm investment and was a friend of the founder of the organization and worked together with that friend to start the wind farm investment entity. Client A reports that he did not know about or authorize this use of his money.

Also, on repeated occasions, Polese took money and used the account of Client B as if it were his own personal bank account. Polese did this despite the fact that Polese knew that Client B was an elderly person who was working on giving away most of Client B's assets to charity before Client B's death. Polese also knew that Client B did not have any children and was not checking his statements regularly and was experiencing some memory loss. Despite all this, Polese helped himself to Client B's money in the following ways:

In May 2015, when the wind farm investment was struggling, Polese and Peterson secretly used $400,000 from the account of Client B to back an Irrevocable Standby Letter of

Credit in support of the wind farm project, at a cost of $12,000 in fees to Client B. The letter of credit did not end up being called, but Client B was out the $12,000 in fees.

In March 2016, Polese took $350,000 from Client B's account. He did this and concealed it by having Peterson transfer the $350,000 to a real estate investment firm – so it would appear as if Client B were making a $350,000 real estate investment. Polese then told the real estate firm that too much money had been sent by mistake and directed the real estate investment firm to transfer $250,000 back to an account which was actually Polese's personal account. Polese and Peterson had the real estate firm use the remaining $100,000 as an investment in the real estate deal, $50,000 for Polese and $50,000 as if an investment by Peterson, even though neither man contributed any of his own money to the investment. Polese used the $250,000 of Client B's funds to pay his own and his family's expenses.

In the spring of 2017, Polese also stole more money from Client B and used the money to pay Polese's personal expenses by implementing the following transfers directly from Client B's account:

   a. March 1, 2017: $25,700 to the college of one of Polese's children ("College 1");
   b. March 7, 2017: $10,775 to the college of another of Polese's children ("College 2");
   c. March 10, 2017: $15,000 to pay Polese's credit card bill,
   d. April 4, 2017: $27,808 to pay Polese's credit card bill, and
   e. May 2, 2017: $13,776 to pay Polese's credit card bill.

To implement these transactions, Polese used the name and personal identification information of his client without the client's permission or authorization.

In June 2017, when the financial services company began making inquiries about the spring 2017 transfers, Polese took steps to try to cover up what he had done. He went to visit Client B with a document listing the transfers and asked Client B to falsely state that Client B

had authorized Polese to use Client B's money to pay for Polese's own expenses. Client B ultimately refused to do so, and felt so pressured by Polese that he called the local police.

### III. GUIDELINES CALCULATION

The parties agree with respect to the applicable Guidelines as follows:

- In accordance with USSG § 2B1.1(a)(1), Defendant's base offense level is seven, because one or more of Defendant's offenses of conviction has a statutory maximum term of imprisonment of 20 years or more.

- In accordance with USSG § 2B1.1(b)(1)(H), Defendant's offense level is increased by fourteen, because the loss amount is more than $550,000, but less than $1.5 million.

- In accordance with USSG § 2B1.1(b)(19)(A), Defendant's offense level is increased by four because the offense involved a violation of securities law and, at the time of the offense, Defendant was an investment adviser, or a person associated with an investment adviser.

- In accordance with USSG § 3A1.1(b)(1), Defendant's offense level is increased by two because Defendant knew or should have known that a victim of the offense was a vulnerable victim.

- in accordance with USSG § 3C1.1, Defendant's offense level is increased by two because Defendant willfully obstructed and impeded or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution or sentencing of the instant offense of conviction and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct.

- in accordance with USSG § 2B1.6 and 18 U.S.C. § 1028A, a term of incarceration of two years shall be imposed consecutive to any term of incarceration on Counts One - Ten.

- Based on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's adjusted offense level under USSG § 3E1.1.

Because the loss figure is just over $550,000, Polese's total offense level based upon the wire fraud charges is 26. With the addition of the mandatory additional two years for aggravated

identity theft, the final guideline range is 87-102 months. Based upon the agreement of the parties, the government recommends a sentence in the range of 75 to 87 months.

With respect to restitution, the plea agreement provides for restitution in the amount of $462,000 plus reasonable attorney's fees and costs of any victims. However, it appears that the financial services company for which Polese worked at the time has already made restitution to Client B, and funds deposited by the co-Defendant, Cornelius Polese of $107,000 are sufficient to repay Client A. The United States understands that Polese has gathered funds and agreed to release accounts held by his former employer that may be sufficient to repay the restitution funds due to his former employer. The parties are still working on confirming this and reaching agreement on restitution. If this can be confirmed, the parties expect to submit a joint proposed restitution order and that no forfeiture order will be needed.

## IV. SECTION 3553(A) FACTORS

The United States submits that a sentence of 75 to 87 months incarceration is a fair and reasonable sentence in this matter, and not more than necessary to appropriately punish and send the necessary deterrent message and avoid unwarranted sentencing disparities.

A.   The Nature and Circumstances of the Offense

The circumstances of the offense are serious. Polese, a licensed investment adviser, took advantage of his position of authority and trust to use the victim's money to make speculative investments. He abused the trust of his clients and pocketed much of the money himself. Polese also involved his junior associate and mentee in the corrupt conduct. Polese was not in financial need. He had sufficient assets that he could have used to pay his own bills and certainly did not need to make the additional and risky investments for which he used client funds. He also knew he was taking money from someone who intended that money to be used for charity. To the

extent that he thought he could steal the money and no one would notice because his client did not track the funds and had no children, it was a heartless theft. To the extent he thought that his clients would pass away before anyone noticed the money was gone, his conduct was particularly craven.

Also, when Polese found out that someone was looking into the payments, far from admitting what he had done, he compounded his crimes by trying to take advantage of Client B and use Client B to cover up for him. Thus, Polese insisted upon visiting Client B and tried to pressure Client B into signing a document falsely stating that Client B had authorized the use of the Client B's funds to pay Polese's personal expenses. Polese even created a note to that effect for the client to sign. Thus, not only did Polese seek to obstruct the investigation, he attempted to use his enormous influence and the trust of his client to help him cover up the theft and tried to involve Client B in making false statements.

    B.  The Defendant's History and Characteristics

The nature and characteristics of the defendant make this crime even more inexcusable. Polese lived a very affluent life on a generous salary and bonus structure for many years. He simply chose to cheat and use his clients' money for his own benefit. There are no significant mitigating factors here.

    C.  The Need for Just Punishment, Adequate Deterrence, And the Avoidance of Unwarranted Sentencing Disparities

This is a case of greed and lack of any moral compass. A fair justice system requires that a defendant with such privileges and opportunities serve a significant term of incarceration just as do defendants without such privileges and opportunities. General deterrence and a fair justice system require that people who have a good education and privileges who commit serious

crimes not be entitled to avoid significant prison terms when others less fortunate are not. It is critical to deter such conduct that the punishment be clear – a meaningful period of incarceration in the range recommended by the United States.

The fact that Cornelius Peterson received only 18 months in no way argues for a lesser sentence for Polese here. Polese was the senior advisor who was directing the majority of the conduct. Polese used Peterson to transfer the $250,000 to Polese's account for his sole benefit and did the March 2017 transfers to his personal account on his own. Polese's conduct was thus worse in kind, he was the manager and far more responsible person who should have been teaching Peterson otherwise, and he engaged in additional conduct, and gained substantially more from his conduct than did Peterson. Also, only Polese engaged in the obstructive conduct and clearly used the identity of another. Thus, Polese has a substantially different guidelines calculation as well as culpability here.

## CONCLUSION

James Polese's conduct was an inexcusable breach of his client's trust. He deserves the serious term of incarceration recommended by the United States here.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney
District of Massachusetts

By:      ___/s/ Sara Miron Bloom_____
        SARA MIRON BLOOM
        Assistant United States Attorney
        (617) 748-3265
        Sara.bloom@usdoj.gov

Date: November 16, 2018

CERTIFICATE OF SERVICE

    I hereby certify that this document is being served by electronic filing upon counsel of record in this matter.

                                            */s/ Sara Miron Bloom*
                                            SARA MIRON BLOOM